## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **JOHN ERIC BENNETT**, | 4:16-CV-11253 |
| Petitioner, | |
| | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| vs. | |
| **JOHN CHRISTIANSEN**, | |
| Respondent. | |

John Eric Bennett ("Petitioner"), confined at the Central Michigan Correctional Facility in St. Louis, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his convictions for third-degree criminal sexual conduct, Mich. Comp. Laws § 750.520d(1)(b); and fourth-degree criminal sexual conduct, Mich. Comp. Laws § 750.520e(1)(b)(i). For the reasons that follow, the petition for writ of habeas corpus is DENIED.

## I. Background

Petitioner was convicted of the above offenses following a jury trial in the Oakland County Circuit Court. This Court recites verbatim the relevant facts regarding Petitioner's conviction from the Michigan Court

of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> On the night at issue, Bennett came home from work and did not want to wake his fiancée and young child, so he went to the basement of his apartment complex and lay down on a mattress in the laundry room. Another resident at the apartment complex, DT, awoke in the middle of the night and realized that she left a load of laundry in the washer. DT went downstairs to the laundry room to move the clothes from the washer to a dryer. After she entered the laundry room, Bennett approached her, introduced himself using his full name, and had a brief conversation with her.

> DT testified that she felt uncomfortable with Bennett in the room and tried to leave. Bennett moved up to her, put his hands under her pajamas, and groped her bare breasts and buttocks. He then used his fingers to separate her labia in an attempt to digitally penetrate her. DT finally got away from him, ran to her apartment, and called 911.

> DT told responding police officers that they could find the perpetrator in the basement. The police went to the basement and found Bennett sleeping on a mattress. He smelled of intoxicants and matched the description given by DT. Bennett told the officers that he had conversed with a woman who identified herself as "T," but initially denied having any physical contact with her. He later told an officer that he had massaged T's shoulders and that his hand might have brushed against her buttocks when she slipped as he helped her with the laundry.

DT attended a corporal [sic] lineup, but selected a differed [sic] individual. At trial, Bennett's lawyer attacked DT's credibility, noting her failure to identify Bennett in the lineup and inconsistencies in recounting what occurred. Bennett's lawyer also argued that DT had various motives, including financial, for falsely accusing Bennett.

The jury, however, found DT credible and found Bennett guilty. Bennett now appeals.

*People v. Bennett*, No. 311903, 2014 WL 2218711, at *1 (Mich. Ct. App. May 27, 2014).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 497 Mich. 948 (2014).

Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, which was held in abeyance to permit Petitioner to return to the state courts to exhaust additional claims. *Bennett v. Trierweiler*, No. 4:16-CV-11253, 2016 WL 1699536 (E.D. Mich. Apr. 28, 2016).

Petitioner filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. seq.* which the trial court denied. *People v. Bennett,* No. 2012-239748-FH (Oakland Cty. Cir. Ct. Dec. 7, 2016). The Michigan appellate courts denied Petitioner leave to appeal. *People v. Bennett,* No. 338668 (Mich. Ct. App. Nov. 8, 2017); *lv. den.* 915 N.W.2d 364 (2018).

On November 26, 2018, this Court granted Petitioner's motion to reopen the case to the Court's active docket and permitted him to file an amended habeas petition. ECF No. 13. Petitioner seeks habeas relief on the following grounds:

> I. Petitioner was deprived of his state and federal constitutional right to effective assistance of counsel, when his attorney failed to admit evidence as to Petitioner's accuser's motive to fabricate the allegations against him.

> II. Petitioner was deprived of his state and federal constitutional right to effective assistance of counsel when his attorney failed to move for suppression of the statements he made before he received a *Miranda* warning.

> III. Petitioner was deprived of his state and federal constitutional right to effective assistance of counsel where his attorney failed to object to the prosecutor arguing that Petitioner's post-arrest, post-*Miranda* silence was substantive evidence of guilt in violation of Petitioner's Fifth and Fourteenth Amendment due process rights.

> IV. Petitioner was deprived of his state and federal constitutional right to effective assistance of counsel when his attorney introduced the testimonial hearsay statement of a non-testifying witness accusing Petitioner of prior bad acts into evidence in violation of Petitioner's Sixth Amendment right under the Confrontational Clause.

> V. Petitioner was deprived of his state and federal constitutional right to effective assistance of counsel when his attorney failed to move for suppression of complainant's in-court identification of Petitioner at trial following an unduly suggestive pre-trial confrontation, where no independent basis was established.

VI. Petitioner was deprived of his Fifth Amendment privilege against compelled self-incrimination and his Sixth Amendment right to counsel (1) where before and after signing a *Miranda* rights form, police repeatedly denied Petitioner's unequivocal request to have his attorney present during a custodial interrogation; (2) after Petitioner re-invoked his right to counsel, police continued to question Petitioner, thus, the *Miranda* waiver form was invalid; and (3) admission of Petitioner's statements into evidence by the trial court was not harmless error.

VII. Petitioner was deprived of his state and federal constitutional right to effective assistance of appellate counsel where counsel failed to raise on appeal or timely inform Petitioner to raise in his Standard 4 brief on direct appeal (1) ineffective assistance of trial counsel for failure to object to a *Brady* violation; and (2) prosecution's inflammatory closing remarks on improperly admitted character evidence.

## II.  **Standard**

28 U.S.C. § 2254(d) provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of

> the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) ((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v.*

*Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas Petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

## III. Analysis

### a. Ineffective assistance of counsel

In his first five claims, Petitioner argues that he was denied the effective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-

prong test. First, the defendant must demonstrate that counsel's performance was so deficient that the attorney did not function as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, the defendant is required to overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.

Second, the defendant must show that such performance prejudiced his or her defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel to show a reasonable

probability that the result of the proceeding would have been different but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas Petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation

when the case involves review under the *Strickland* standard itself."

*Harrington*, 562 U.S. at 101.

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. at 105.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 563 U.S. 170, 196 (2011).

Petitioner argues that this Court should not employ AEDPA's deferential standard with respect to several of his ineffective assistance of trial counsel claims because the Michigan Court of Appeals did not reach the prejudice prong of the *Strickland* standard in rejecting those claims. ECF No. 9 Page.ID 498.

The Sixth Circuit has found that when a state court only addresses one prong of the *Strickland* test in rejecting a habeas Petitioner's ineffective assistance of counsel claim, the federal habeas court should review that prong under the AEDPA's deferential standard of review but apply *de novo* review to the other prong. *See, e.g., Rayner v. Mills,* 685 F. 3d 631, 636-39 (6th Cir. 2012). This is a "peculiar rule" that is contrary to both the letter and the spirit of § 2254(d), and consequently one that the Sixth Circuit subsequently questioned. *See Hodges v. Colson,* 727 F. 3d 517, 537, n. 5 (6th Cir. 2013). The Sixth Circuit in *Hodges* believed that the panel in *Rayner* had ignored the Supreme Court's language in *Harrington* which indicated:

> Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) *applies when a "claim," not a component of one, has been adjudicated.*

*Id.* (quoting *Harrington,* 562 at 98) (emphasis original).

The Sixth Circuit also noted in *Hodges* that their prior holding in *Rayner* created a "peculiar rule" by which "the more information the state court provides, the less deference we grant it. This is contrary not only to

11

the language of the statute, which speaks of "claims," not components of claims, but also contrary to the spirit of § 2254(d), which is designed to give more deference to a state court judgment on the merits." *Id.*

Pursuant to *Harrington,* AEDPA's deferential standard of review applies, even if the Michigan Court of Appeals did not explicitly address the prejudice prong of some of the ineffective assistance of counsel claims. Moreover, as discussed below, the Michigan Court of Appeals found that trial counsel was not deficient. Such a finding "implicitly, but unequivocally, encompasses a finding that the performance did not prejudice the defendant." *Hodges,* 727 F.3d at 537, n.5.[1]

In his first claim, Petitioner argues that trial counsel was ineffective for failing to introduce a letter from a law firm who represented the victim, DT, to establish that she had a financial incentive to falsely accuse Petitioner of sexual assault.

---

[1] Absent a clear directive from the Supreme Court or a decision of the Court of Appeals sitting en banc, a panel of the Court of Appeals, or for that matter, a district court, is not at liberty to reverse the circuit's precedent. *See Brown v. Cassens Transport Co.*, 492 F.3d 640, 646 (6th Cir. 2007). In the absence of Supreme Court precedent directly on point, a district court should decline to "underrule" established circuit court precedent. *See Johnson v. City of Detroit*, 319 F. Supp. 2d 756, 771, n. 8 (E.D. Mich. 2004). It appears, however, that the clear language of the Supreme Court's decision in *Harrington* indicates that the AEDPA's deferential standard of review applies to both parts of a multipart claim, even if the state court only addresses one component of that claim. This Court's conclusion is supported by the logic behind the Sixth Circuit's criticism of *Rayner* in the *Hodges* decision.

The Michigan Court of Appeals rejected the claim:

Bennett first argues that his lawyer should have introduced a letter from a law firm notifying the apartment complex that DT hired a lawyer regarding allegations of injuries, which included rape. Bennett's lawyer questioned DT about the letter at trial, but did not seek its admission. Bennett contends that the letter would have impeached DT's credibility by showing that she had a financial motive to falsely accuse him of sexual assault.

In the letter, the writer indicates that the law office had been retained to represent DT in connection with "injuries suffered in an accident, which occurred . . . on March 11, 2011. The injuries include, but are not limited to rape." At trial, DT admitted that she hired a lawyer, but denied that it was in relation to the November 3, 2011, sexual assault by Bennett and denied having any knowledge about the letter.

Given the date of the incident to which the letter refers and the parties to whom it was sent, Bennett's lawyer's reasons for proceeding as he did are both apparent and reasonable. On its face, the letter does not describe the incident at issue and appears to refer to an earlier accident. Thus, even though the letter refers to possible injuries from a "rape", a reasonable lawyer might have determined that the letter itself was not very persuasive as impeachment evidence. And Bennett's lawyer effectively introduced the issue that DT might have had a financial motive for falsely accusing Bennett by questioning her about the letter. Bennett's lawyer also referred to the letter in closing and stated that DT had a "motive to get money for damages" and argued that her false claims were "suppose[ ] to yield her some money if everything goes right."

Moreover, the record indicates that defense counsel used other available means to attack DT's credibility. For example, defense counsel questioned DT about her failure to identify

13

defendant during a corporeal lineup, about her inconsistent statements regarding the exact nature of the assault, about inaccurate information that she provided on her housing application, and other details concerning the night at issue. Under the circumstances, Bennett has not overcome the strong presumption that his lawyer's use of the letter was merely a matter of sound trial strategy.

*People v. Bennett*, 2014 WL 2218711, at *2 (internal citations omitted).

A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F.3d 520, 527 (6th Cir. 2004) (internal quotation omitted). A defense counsel also has no duty to present impeachment evidence that would be of marginal utility. *See United States v. Munoz*, 605 F.3d 359, 381–82 (6th Cir. 2010). The letter from the law firm to the apartment complex referencing a rape was dated March 2011, eight months prior to the November 3, 2011 sexual assault. Any allegation by the victim that she had previously been sexually assaulted in March of 2011 would have only had marginal impeachment value with respect to the sexual assault allegations from November 3, 2011 against Petitioner and would not have exculpated him of the crime.

In any event, Petitioner was not prejudiced by counsel's failure to introduce the letter from the law firm to the apartment complex because

the letter was cumulative of other evidence in support of Petitioner's claim that the victim had a motive to falsely accuse Petitioner of sexual assault and that she was otherwise not credible. *Wong v. Belmontes,* 558 U.S. at 22–23; *see also United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995); *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001). In this case, the jury had significant evidence presented to it that the victim's credibility was questionable as well as a financial motive to fabricate sexual assault charges against Petitioner. Because the jury was "well acquainted" with evidence that would have supported Petitioner's claim that the victim fabricated these charges, additional evidence in support of Petitioner's defense "would have offered an insignificant benefit, if any at all." *Wong,* 558 U.S. at 23.

Petitioner failed to overcome the presumption that counsel's decision not to present additional evidence concerning the victim's motive to fabricate a sexual assault charge against Petitioner was sound trial strategy. *See Robinson v. Lafler*, 643 F. Supp. 2d 934, 939 (W.D. Mich. 2009)(defense counsel was not ineffective in failing to call additional witnesses to testify about victim's motive to lie; decision was reasonable

and within the range of professionally competent assistance). Petitioner is not entitled to relief on his first claim.

Petitioner alleges in his second claim that trial counsel was ineffective for failing to move to suppress statements that Petitioner made to Southfield police officers in the basement of the apartment complex. Petitioner argues that the statements were inadmissible because he was not advised of his *Miranda* warnings by the officers, even though he was effectively in police custody at the time.

The Michigan Court of Appeals rejected the claim:

> The totality of the objective circumstances demonstrates that Bennett was not in custody at the time the officers questioned him in the basement. The officers arrived at the scene in response to a dispatch for a "possible assault" shortly after it was reported. They immediately spoke with DT, who told them that she was assaulted in the basement and that the perpetrator was still down there sleeping on a mattress. The officers went downstairs and found Bennett sleeping on a mattress. After waking him, they asked if he had had any contact with anyone in the laundry room, and why he was sleeping there. The brief questioning occurred in the basement next to the mattress where Bennett had been sleeping. He was not under arrest or deprived of his freedom of action in any significant manner during this questioning. There is no indication that the officers subjected Bennett to a coercive, police-dominated environment while questioning him.
>
> Bennett's primary argument is that he did not feel free to leave because he was the focus of the investigation and had

outstanding warrants. However, the pertinent inquiry is objective, not subjective. There is no evidence that the officers knew about or discussed his outstanding warrants. Further, "the requirement of warnings [are not] to be imposed simply because . . . the questioned person is one whom the police suspect." Because Bennett was not in custody, the officers had no obligation to advise him of his rights, and his lawyer cannot be faulted for failing to move to suppress his statements on that basis.

*People v. Bennett*, 2014 WL 2218711, at * 3 (internal citations omitted).

A prosecutor may not use a defendant's statements which stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Unless other means are devised to inform a suspect of his right to silence and a "continuous opportunity to exercise it," the person must be warned that: (1) he or she has a right to remain silent; (2) any statement he does make may be used against him; and (3) that he has a right to the presence of an attorney, either appointed or retained. *Miranda*, 384 U.S. at 444.

Police officers are not required to administer *Miranda* warnings to every person whom they question, nor are officers required to administer *Miranda* warnings simply because the questioning takes place in a police

station or because the questioned person is one whom the police suspect. *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977). Instead, *Miranda* warnings are required "only where there has been such a restriction on a person's freedom as to render him or her 'in custody.'" "Custody," for purposes of *Miranda,* requires a "significant deprivation of freedom." *See Mason v. Mitchell,* 320 F.3d 604, 632 (6th Cir. 2003).

Two discrete inquiries are essential to determining whether a criminal suspect was in custody at time of interrogation, and therefore entitled to *Miranda* warnings: the circumstances surrounding the interrogation and whether a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave. *See Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

Generally, questioning occurring at a criminal defendant's home or residence does not present a police-coercive environment. *See United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010)(citing *United States v. Panak,* 552 F.3d 462, 467 (6th Cir. 2009); *United States v. Salvo*, 133 F.3d 942, 950 (6th Cir. 1998)).

Courts analyze whether a person is in custody in their home based on the following factors:

> (1) [T]he purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police or voluntarily admitted the officers to the residence and acquiesced to their requests to answer some questions.

*United States v. Salvo*, 133 F.3d at 950.

In the present case, the Michigan Court of Appeals reasonably concluded that Petitioner was not subjected to custodial interrogation, when he was questioned briefly by the police in the basement of the apartment complex.

General on-the-scene questioning by the police as to the facts surrounding a crime or other general questioning of citizens by the police in the fact-finding process does not require *Miranda* warnings. *Miranda,* 384 U.S. at 477-78. Such questioning enables an officer "to determine whether a crime has been committed or is in progress." *Lowe v. United States*, 407 F.2d 1391, 1393-94 (9th Cir. 1969).

In the present case, the officers asked Petitioner a few brief questions as part of their initial investigation to determine whether a crime had taken place and whether Petitioner had a legitimate reason

for being in the basement. Petitioner had not yet been formally arrested at the time that he was asked these questions. In light of the fact that the police merely asked some preliminary questions of Petitioner to determine whether a crime had been committed and whether Petitioner was the perpetrator, *Miranda* warnings were not required. *See Podlaski v. Butterworth,* 677 F.2d 8, 9–10 (1st Cir. 1982).

Other cases have reached the same result. *See Hoffner v. Bradshaw,* 622 F.3d 487, 510-12 (6th Cir. 2010)(police did not need to give Petitioner *Miranda* warnings upon entering the house to ask basic investigatory questions concerning the whereabouts of the murder victim); *United States v. Wolak*, 923 F.2d 1193, 1196 (6th Cir. 1991)(defendant was not in "custody" where police officers responded to disturbance call at store and one officer talked to defendant, officers had no details on what was going on before they arrived and did not know what to expect, and defendant was not the specific focus of investigation at time he was questioned); *Vickers v. Stewart,* 144 F.3d 613, 616-17 (9th Cir. 1997) (introduction of incriminating statements made by defendant to officers immediately after murder did not violate *Miranda*, because asking defendant what happened in emergency situation did not amount to

custodial interrogation); *U.S. v. Barnes,* 464 F.2d 828, 829-30 (D.C. Cir. 1972) (where officer responding to trouble call was met by defendant and third person who told officer that defendant had set fire and officer asked defendant whether it was true, defendant accepted blame and responded affirmatively to officer's question whether he had set fire, defendant's responses were admissible despite lack of *Miranda* warnings, defendant not having been in custody or suspected or arrested or otherwise deprived of his freedom of action in any significant way).

Without strong evidence suggesting that Petitioner was subjected to custodial interrogation within the meaning of *Miranda* during his initial encounter with the police in the basement, "a fairminded jurist could conclude that counsel acted reasonably in choosing not to move for suppression" of Petitioner's statement. *See Wilkens v. Lafler*, 487 F. App'x 983, 993–94 (6th Cir. 2012)("Given the dearth of record evidence suggesting custody, a fairminded jurist could conclude that [Petitioner's] counsel acted competently in focusing his efforts elsewhere.").

Moreover, Petitioner is unable to show that he was prejudiced by counsel's alleged ineffectiveness, "because, even if his counsel had filed the motion to suppress, the trial court would have almost certainly

denied it as meritless." *Id.* Petitioner is therefore not entitled to relief on his second claim.

In Petitioner's third claim, he argues that trial counsel was ineffective for failing to object to several references to Petitioner cutting off questioning from Agent Mark O'Riordan.

On direct examination, Petitioner's attorney asked Agent O'Riordan about the length of time that he questioned Petitioner:

> Q. After three and a half hours of questioning, that's what you got from him [defendant].
>
> A. Yes.
>
> Q. And you wanted to question him some more, correct?
>
> A. Yes.
>
> Q. And he didn't want to answer any more questions, he asked for an attorney, right?
>
> A. That is correct.
>
> Q. And you stopped.
>
> A. Yes.

Tr. 6/22/12, p. 260, ECF No.16-9 Page.ID 1216.

The prosecutor subsequently cross-examined Agent O'Riordan about the reasons that Petitioner stopped the interview:

Q. Before he, before he—the interview stopped, did he make any statements about why he didn't want to make any further statements to you?

Defense counsel: Well, that's a constitutional right.

The prosecutor: No, that doesn't—

Defense counsel: He doesn't have to give an explanation for that.

The Court: Hold on.

The prosecutor: All right, let me ask, let me ask it in this way in case—

The Court: Okay.

Q. Did he make any statements about his future or anything in that regard?

A. The state—

Defense counsel: Objection as to relevancy, Judge, as to his future.

The Court: Overruled, go ahead, you can answer.

A. The statements were made prior to asking for his attorney because he was unsure that the statements that continuing this conversation with me would be—work out in a positive way for him for this investigation.

*Id.*, pp. 260–61, ECF No. 16-9 PageID.1216.

The Michigan Court of Appeals rejected Petitioner's claim:

As the exchange discloses, Bennett's lawyer did object to the line of questioning on constitutional and relevancy grounds. Because counsel did in fact object, there is no merit to his claim. Moreover, Bennett cannot establish that his lawyer's failure to do anything more affected the outcome of the case. Even if he had successfully objected to the testimony, as a result of his lawyer's own questioning of the witness, the jury already knew that Bennett stopped the interview and requested an attorney. Defense counsel's apparent tactical reason for introducing Bennett's post-arrest, post-*Miranda* silence was to argue that after 3–1/2 hours of "grilling," Bennett continuously denied any wrongdoing and stated only that he accidentally touched DT's buttocks. Bennett has not overcome the presumption that his lawyer's decision to pursue this line of questioning and object in this manner were matters of sound trial strategy.

*People v. Bennett*, 2014 WL 2218711, at *4 (internal citations omitted).

Moreover, to the extent that defense counsel himself opened the door to this testimony, an attorney is not ineffective for eliciting testimony about a defendant's exercise of his right to remain silent when it is part of a valid trial strategy. *See Hall v. Vasbinder,* 563 F.3d 222, 237 (6th Cir. 2009). Counsel's questions to Agent O'Riordan were part of a valid trial strategy of attempting to show that although Petitioner had been questioned for three and a half hours, the only admission he made was that he accidentally touched the victim's buttocks.

Counsel did object to the references to Petitioner's post-*Miranda* silence during the prosecutor's cross-examination of Agent O'Riordan.

Thus, Petitioner's third ineffective assistance of counsel claim is meritless.

Petitioner's fourth claim is that his attorney was ineffective for failing to object to the prosecutor eliciting another reference to Petitioner invoking his right to remain silent when the prosecutor questioned Detective Michael Pieroni, who observed the interview via closed-circuit television:

> Q. Okay, did the Defendant, John Bennett, make any statements regarding his interaction with [DT] on November 3, 2011?
>
> A. Yes.
>
> Q. What do you recall him stating if anything?
>
> A. Mr. Bennett stated that he was in the basement when [DT] was down there. Mr. Bennett stated that he did have a conversation with [DT], and at one point, he did rub her shoulders. Mr. Bennett stated that the victim told him she had a boyfriend or something to that effect, I believe is what he stated in the interview. He also stated that as he was following [DT] up the stairs, she slipped and fell, and his hand may have brushed against her butt. He also stated that he didn't want to let—he didn't want to let a few minutes of digression jeopardize his future.
>
> Q. At some point in time, did the interview stop?
>
> A. It did.

Tr. 6/22/12, pp. 79–80, ECF No. 16-9 PageID.1171.

Petitioner claims that the prosecutor again commented on Petitioner's invocation of his right to remain silent by referring to Detective Pieroni's remark in her summation:

> "But he doesn't want to say anything more because he doesn't want to jeopardize his future."

Tr. 6/25/12, p. 140, ECF No. 16-10 PageID.1255.

The Michigan Court of Appeals rejected Petitioner's claim:

> Bennett argues that Pieroni's testimony that Bennett "didn't want to let a few minutes of digression jeopardize his future" was an improper comment regarding his post-arrest, post-*Miranda* silence. In context, Bennett's comment had nothing to do with the invocation of his rights. Instead, the remark appears to refer to Bennett's decision to not engage in anything beyond conversing with DT and rubbing her shoulders, which would have led to a potentially jeopardizing "few minutes of digression." This interpretation is consistent with Bennett's continuous denial that he acted inappropriately and provides an explanation for why he would not have had any sexual contact with her. Consequently, because Pieroni's testimony did not reference Bennett's post-arrest, post-*Miranda* silence, Bennett's lawyer cannot be faulted for failing to object on that ground.

*People v. Bennett*, 2014 WL 2218711, at *5.

When viewed in context, Petitioner's comment about not wanting "to let a few minutes of digression jeopardize his future" does not appear to have been an invocation of Petitioner's right to remain silent but rather an expression of Petitioner's decision during the encounter with the

victim not to go any further than rubbing the victim's shoulders because he allegedly did not want to jeopardize his future by touching her in any other way. Detective Pieroni's testimony thus does not appear to have been an improper comment on Petitioner's post-arrest silence, and counsel's failure to object to this testimony was not ineffective assistance of counsel. See *Pillette v. Berghuis*, 630 F. Supp. 2d 791, 803 (E.D. Mich. 2009), *aff'd in part, rev'd in part on other grds*, 408 F. App'x 873 (6th Cir. 2010)*; cert. den.* 565 U.S. 829 (2011). But the prosecutor's reference to Detective Pieroni's testimony in her summation is different: it suggests (unlike the testimony itself), that Petitioner stopped talking because he "didn't want to jeopardize his future." Though it was not an accurate summary of what the Detective reported that Petitioner actually said, the prosecutor's summary does arguably appear to refer to the Petitioner's silence—suggesting that he remained silent because telling the truth might get him in trouble.

Assuming that the prosecutor's summary of the testimony amounted to an improper reference to Petitioner's exercise of his right to remain silent, Petitioner has nonetheless failed to show that counsel's failure to object to the reference caused him any prejudice in light of all

of the additional evidence of guilt. There was significant evidence to convict Petitioner apart from Detective Pieroni's testimony. The victim testified that Petitioner sexually assaulted her and positively identified him in court as her assailant. When the police arrived at the apartment building, they were directed by the victim to the basement, where they found Petitioner sleeping on a mattress. Petitioner was the only person in the basement and matched the description that the victim gave of her assailant. The police discovered that Petitioner lived in an upstairs apartment with his fiancée and child, just as he told the victim. Petitioner admitted to the police at the time of his initial encounter that he had spoken with the victim in the laundry room although he denied any physical contact with her. In a subsequent statement to the police, Petitioner admitted that he massaged the victim's shoulders and that his hand might have brushed against her buttocks when she slipped as he helped her with the laundry. In light of the overwhelming evidence against Petitioner in this case, defense counsel's failure to object to the prosecutor's mention of Petitioner's silence did not prejudice Petitioner and thus did not amount to the ineffective assistance of counsel. See

*Harding v. Bock*, 107 F. App'x. 471, 479-80 (6th Cir. 2004); *See also Lovett v. Foltz*, 687 F. Supp. 1126, 1144-45 (E.D. Mich. 1988).

Petitioner is not entitled to relief on his third claim.

Petitioner's fourth claim argues that trial counsel was ineffective for eliciting testimony from Sergeant Timothy Boal that Petitioner's fiancée told Boal that Petitioner "probably did it," i.e., the sexual assault, because her roommate once told her about an incident in which the roommate had been drinking heavily and woke up to find Petitioner engaging in sex with her.

The Michigan Court of Appeals rejected the claim:

> Reading the questions in context, it is apparent that Bennett's trial lawyer did not elicit the statement to show that Bennett had engaged in a prior bad act. Rather, it appears that Bennett's lawyer was trying to demonstrate that the police officers' reports were unreliable and inaccurate. Bennett's lawyer was able to challenge the accuracy and reliability of information contained in the report because it was odd that Boal took no further action on a reported crime and because Bennett's fiancée would deny making the statement. Bennett's lawyer elicited from Boal that no one else was present when the fiancée supposedly made this damaging statement, that he did not take notes during the interview, and that he merely relayed the statement to a patrol officer, who then included it in the report. Bennett's lawyer highlighted the fact that Boal claimed to be repeating the fiancée's statement verbatim and yet did not take notes. Immediately after Boal's testimony, Bennett's lawyer called

Bennett's fiancée, who vehemently denied making the statement and explained that she's never had a roommate.

In addition to this line of questioning, Bennett's lawyer raised questions regarding other aspects of the investigation, including the failure to collect DNA evidence, inaccuracies in the police report, and the "grilling" of Bennett for 3–1/2 hours. The jury could have determined that the police investigation and report should not be trusted, which might have bolstered the defense that DT was not credible and that Bennett was innocent. Given that the case essentially involved judging the credibility of DT, as well as the police witnesses, attacking the reliability of the police investigation and report was reasonable trial strategy. Therefore, we cannot conclude that Bennett's lawyer was ineffective for proceeding in this manner.

*People v. Bennett*, 2014 WL 2218711, at * 5–6 (internal citation omitted).

Because counsel intended to disprove such statements in order to undermine the credibility of the investigation, it was not deficient performance for counsel to elicit the prejudicial testimony from Sergeant Boal. Boal testified that Petitioner's fiancée stated to him that Petitioner "probably did it" because the fiancée's roommate had told her that Petitioner had sexually assaulted the roommate in the past. Counsel sought to undermine the credibility of Boal and the investigation by casting doubt on the veracity of these statements. These questions were part of a legitimate strategy to discredit the prosecution's case or of the

witnesses who testified, particularly the various police officers. *See Campbell v. U.S.*, 364 F.3d 727, 734-35 (6th Cir. 2004). Petitioner is not entitled to relief on his fourth claim.

In his fifth claim, Petitioner argues that trial counsel was ineffective for failing to challenge the victim's in-court identification of Petitioner, claiming that it was the product of a suggestive identification procedure. Petitioner claims that counsel should have moved to suppress the victim's in-court identification because she failed to identify him in a corporeal lineup.

The Michigan Court of Appeals rejected this claim:

> Here, Bennett has not identified any act by officers or the prosecution that improperly suggested that he was the perpetrator. Bennett's argument regarding DT's failure to select him at the corporeal lineup involves the reliability of DT's identification testimony, which is primarily a question for the jury. The jury was aware that DT had not identified him as the perpetrator and actually selected a different lineup participant who was three inches taller and weighed 35 pounds less. Further, the prosecutor never asked DT to identify Bennett in court at the preliminary examination. Rather, it was Bennett's lawyer who asked DT if the person who assaulted her was in the courtroom. DT answered affirmatively, and Bennett's lawyer used her previous inaccurate identification at the lineup to argue that she was not a credible witness. Thus, there is no evidence of any pretrial identification procedure that was unduly suggestive.

Moreover, Bennett's identity as the person who had contact with DT in the basement was not a significant issue at trial. Although DT could not describe or identify the suspect by his face, she was able to provide his location, a description, and his name. As directed by DT, the officers went to the basement where they found Bennett sleeping on a mattress; Bennett was the only person in the basement. An officer testified that Bennett "absolutely matched" the description provided by DT and was sleeping "exactly" where DT explained he would be. Upon investigation, it was determined that Bennett lived in an upstairs apartment with his fiancée and child, just as he told DT. Most significantly, Bennett admitted that he had conversed with a woman named T—the name DT gave him— in the basement on the night at issue. Further, Bennett explained why he was in the basement to the officers and his explanation was consistent with the explanation he had previously given to DT, and he identified aspects of his conversation with DT that were unique to DT. In light of this evidence, Bennett's identity as the person who had contact with DT in the basement was not a principal issue at trial. Instead, the principal issue for the jury to resolve was the credibility of DT's allegations that Bennett sexually assaulted her. Consequently, Bennett has failed to show either that his lawyer's decision to not move to suppress DT's in-court identification was objectively unreasonable under prevailing professional norms or that there is a reasonable probability that the outcome would have changed if DT's identification testimony had been suppressed.

*People v. Bennett*, 2014 WL 2218711, at * 6 (internal citation omitted).

An eyewitnesses' failure to identify a suspect during a lineup goes to the weight or credibility of the in-court identifications, not the admissibility. *Millender v. Adams*, 376 F.3d 520, 525 (6th Cir. 2004)

(citing *United States v. Causey*, 834 F.2d 1277, 1286 (6th Cir. 1987); *People v. Barclay*, 528 N.W.2d 842 (1995)). Because there was no showing that the live line-up was impermissibly suggestive, Petitioner's counsel was not ineffective in failing to object to the in-court identification of Petitioner by DT, even though she failed to identify Petitioner at the corporeal line-up. *Id.*

Finally, because of the overwhelming evidence against Petitioner in this case, counsel was not ineffective in failing to challenge the reliability of DT's identification of Petitioner. *See Riley v. Jones,* 476 F. Supp. 2d 696, 710 (E.D. Mich. 2007). Petitioner is not entitled to relief on his fifth claim.

### b. Violation of *Miranda* rights

Petitioner next claims that his incriminating remarks to Agent O'Riordan should have been suppressed because Agent O'Riordan continued to question Petitioner after he invoked his right to counsel.

The Michigan Court of Appeals rejected this claim:

At an evidentiary hearing on Bennett's statements, the interviewing agent testified that he immediately ceased the questioning once Bennett requested an attorney. In contrast, Bennett testified that he had invoked his right to counsel three separate times before the agent finally honored his request. The trial court considered the conflicting testimony

33

and expressly found the agent to be credible. The court also observed that the waiver of rights forms supported its finding that Bennett knowingly and willingly waived his right to consult with an attorney. It was undisputed that Bennett was advised of his *Miranda* rights, indicated that he understood those rights, initialed each right, and signed a written waiver. The record also showed that Bennett has some college education and was familiar with the criminal legal system. For that reason, we cannot conclude that the trial court clearly erred when it found that the agent terminated the interrogation immediately after Bennett requested a lawyer.

*People v. Bennett*, 2014 WL 2218711, at * 7 (internal citation omitted).

Once an accused has expressed his desire to deal with the police only through counsel, he is not to be subjected to further interrogation until counsel has been made available to him or her, unless the accused initiates further communication with the police. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

In considering federal habeas petitions, a federal district court must presume the correctness of state court factual determinations, and a habeas Petitioner may rebut this presumption only with clear and convincing evidence. *Bailey v. Mitchell*, 271 F. 3d 652, 656 (6th Cir. 2001); 28 U.S.C. § 2254(e)(1). Subsidiary factual questions in determining the voluntariness of a statement to police, such as whether the police engaged in intimidation tactics alleged by a habeas Petitioner, are

entitled to the presumption of correctness accorded to state court findings of fact. *Miller v. Fenton*, 474 U.S. 104, 112 (1985). The presumption of correctness also "also applies to those implicit findings of fact that are inherent in [a state court's] resolution of conflicting evidence." *McPherson v. Woods*, 506 F. App'x. 379, 387 (6th Cir. 2012); *see also McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996)(implicit findings are also presumed to be correct "because of the trial court's ability to adjudge the witnesses' demeanor and credibility").

In this case, the state trial court's factual finding that Agent O'Riordan had ceased interrogating Petitioner when he asked for counsel is entitled to the presumption of correctness, because Petitioner has failed to present clear and convincing evidence to rebut this presumption. *See Pritchett v. Pitcher*, 117 F.3d 959, 963-64 (6th Cir. 1997). The trial judge's analysis in denying Petitioner's motion to suppress necessarily required a credibility determination concerning whether Petitioner should be believed concerning the factual allegations underlying his claim that his confession was involuntary. *McPherson,* 506 F. App'x at 388. The judge chose to reject Petitioner's testimony on the factual allegations underlying his Fifth Amendment claim. Indeed, "a contrary

factual finding would have required suppression of [Petitioner's] statement." Thus, "It was not unreasonable for the Michigan Court of Appeals to defer to the credibility determination of the trial judge. The law of the Supreme Court, the Sixth Circuit, and the state of Michigan all call for deference to trial judges on matters of witness credibility under these circumstances." *Id.* Because the trial judge's rejection of Petitioner's *Edwards* claim was clearly based on the judge's determination that Petitioner's factual allegations were not credible, Petitioner is not entitled to habeas relief on his claim in the absence of clear and convincing evidence to the contrary.

## C. Ineffective assistance of appellate counsel

Finally, Petitioner contends he was denied the effective assistance of appellate counsel because appellate counsel failed to raise two claims that Petitioner argues should have been raised on his appeal of right.

Respondent argues that Petitioner's final claim is procedurally defaulted because Petitioner raised his claim only for the first time on post-conviction review and failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for not raising this claim on his appeal of right. Petitioner, however, could not have procedurally defaulted his

ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). Accordingly, the Court addresses the merits of this claim.

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court-appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). A habeas court must defer twice: first to appellate counsel's decision not to raise an issue and second to the state court's determination that appellate counsel was not ineffective. *Woods v. Etherton*, 136 S. Ct. 1149, 1153 (2016)(per curiam) ("Given AEDPA, both Etherton's appellate counsel and the state habeas court were to be afforded the benefit of the doubt.").

Petitioner raised his ineffective assistance of appellate counsel claim in his post-conviction motion for relief from judgment. In reviewing a claim under the AEDPA's deferential standard of review, this Court must review "the last state court to issue a reasoned opinion on the issue." *Hoffner v. Bradshaw*, 622 F.3d at 505 (quoting *Payne v. Bell*, 418

F.3d 644, 660 (6th Cir. 2005)). The Michigan Court of Appeals and the Michigan Supreme Court both denied Petitioner's post-conviction application for leave to appeal in unexplained one-sentence orders. Accordingly, this Court must "look through" these decisions to the Oakland County Circuit Court opinion denying the motion for relief from judgment, which was the last state court to issue a reasoned opinion. Then, the Court can decide whether that court's adjudication of Petitioner's claim was "contrary to," or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See Hamilton v. Jackson*, 416 F. App'x 501, 505 (6th Cir. 2011).

Although the trial judge on post-conviction review did not explicitly reject Petitioner's ineffective assistance of appellate counsel claim on the merits, she did note that Petitioner argued that appellate counsel's ineffectiveness in failing to raise the underlying claims on his appeal of right established cause under M.C.R. 6.508(D)(3). The judge explicitly rejected Petitioner's argument that appellate counsel's alleged ineffectiveness excused Petitioner from not raising these claims on his appeal of right. *People v. Bennett,* No. 2012-239748, Slip. Op. at * 4, ECF

16-15 PageID.1955. The state court's rejection of Petitioner's argument that appellate counsel's ineffectiveness established good cause under M.C.R. 6.508(D)(3) was an adjudication on the merits of Petitioner's ineffective assistance of appellate counsel claim and the AEDPA deferential standard would thus apply. *See Jackson v. Lafler*, 453 F. App'x 620, 624 (6th Cir. 2011).

Petitioner claims that appellate counsel was ineffective for failing to raise a claim that trial counsel was ineffective for failing to object to the prosecutor's failure to turn over a copy of the videotaped interview between himself and Agent O'Riordan, as per the requirements of *Brady v. Maryland,* 373 U.S. 83 (1963). Petitioner alleges this videotape would establish that Agent O'Riordan continued questioning Petitioner after he invoked his right to counsel. Petitioner also claims that appellate counsel was ineffective for failing to raise a prosecutorial misconduct claim based on the prosecutor's reference in her summation to Petitioner's allegedly prior bad act of sexually assaulting his fiancée's roommate.

The trial court judge rejected Petitioner's first sub-claim, concluding that Petitioner failed to show that the videotape contained information that was exculpatory or impeaching. The judge concluded

that without knowing the contents of the videotape, the judge was unable to determine whether Petitioner's access to the videotape would have affected the outcome of the case. In the absence of a showing of what was contained in the videotape, the judge ruled that Petitioner was unable to show a reasonable likelihood that he would have been acquitted had his attorney obtained the videotape. *People v. Bennett,* No. 2012-239748, Slip. Op. at *5, ECF 16-15 PageID.1956. The judge also rejected Petitioner's underlying prosecutorial misconduct claim, finding Petitioner failed to show that there was a reasonable likelihood that Petitioner would have been acquitted had the prosecutor not made these remarks, in that the prosecutor's reference to the roommate's allegation was brief and isolated and the jury heard evidence from Petitioner's fiancée in which she denied making this statement about her roommate to Sergeant Boal. *Id.,* *6, ECF No. 16-15 PageID.1957.

With respect to the first sub-claim, Petitioner has failed to show either the state courts or this Court that a videotape of the interview with Agent O'Riordan exists or that it contains exculpatory or impeachment evidence. Petitioner's allegation that such a videotape existed is conclusory and unsupported. Conclusory allegations of ineffective

assistance of appellate counsel do not warrant habeas relief. *See Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998). Petitioner is unable to show that appellate counsel was ineffective for failing to raise this claim.

With regard to Petitioner's second ineffective assistance of appellate counsel claim, this Court notes that Petitioner was represented by an attorney from the State Appellate Defender Office, who filed a 28-page brief on appeal, in which he raised the same issues that make up Petitioner's first three claims in the current petition. Appellate counsel also filed a motion for a remand to the trial court for an evidentiary hearing on Petitioner's ineffective assistance of trial counsel claims. Motion to Remand, Brief on Appeal, ECF No. 16-12 PageID.1399-1442. Appellate counsel also filed a reply brief. ECF No. 16-12 PageID.1532-42.

Petitioner's appellate counsel raised three issues on his appeal of right alleging several constitutional violations. The trial judge, in rejecting Petitioner's prosecutorial misconduct claim, also concluded that Petitioner failed to establish that appellate counsel was ineffective for not raising this claim on Petitioner's appeal of right, so as to establish cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise

this claim on the appeal of right. The judge, in so finding, implicitly ruled that Petitioner's prosecutorial misconduct claim was not "clearly stronger" than the three claims raised by appellate counsel on the appeal of right. Fairminded jurists could agree with that holding, which means the Michigan courts reasonably rejected Petitioner's claim that appellate counsel was ineffective for failing to raise a prosecutorial misconduct claim on his appeal of right. *See Wagner v. Klee*, 620 F. App'x 375, 380 (6th Cir. 2015). Petitioner is not entitled to relief on his seventh claim.

### c. Conclusion

The Court denies the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to Petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas Petitioner's constitutional claims on the merits, the

Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002).

Although the Court denies a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is lower than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires

a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765.

Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous. Therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *Id.*

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **GRANTED** leave to appeal *in forma pauperis.*

DATED August 30, 2019.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge